IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SENECA TATE,

    Plaintiff,

v.                                                 No. 15-cv-827-DRH-DGW

WIRTZ BEVERAGE ILLINOIS, LLC, WIRTZ
BEVERAGE GROUP, LLC, WIRTZ
BEVERAGE ILLINOIS BELLEVILLE, LLC,
and BRICE CHAPMAN,

    Defendants.

## ORDER

HERNDON, District Judge:

### I. INTRODUCTION

Plaintiff, a former employee of Wirtz Beverage Illinois Belleville, LLC, alleges she was sexually harassed by her supervisor, Brice Chapman ("Chapman"), during her employment and that she was retaliated against for complaining about it. Plaintiff brings claims for sexual discrimination/harassment under Title VII of the Civil Rights Act of 1964 as to each of the corporate defendants ("Wirtz Beverage Defendants") (Counts I, VII, and XIII); retaliation under Title VII against the Wirtz Beverage Defendants (Counts II, VIII, and XIV); negligent hiring as to the Wirtz Beverage Defendants (Counts III, IX, and XV); negligent retention as to the Wirtz Beverage Defendants (Counts IV, X, and XVI); negligent supervision as to

the Wirtz Beverage Defendants (Counts V, XI, and XVII); and intentional infliction of emotional distress ("IIED") as to Chapman and the Wirtz Beverage Defendants.

Defendants contend that all of plaintiff's tort claims (negligent hiring, negligent retention, negligent supervision, and IIED) are preempted by the IHRA and must be dismissed pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction. Additionally, defendants argue the negligent hiring and IIED claims are subject to dismissal for failure to state a claim on which relief may be granted. For the reasons discussed herein, the motion to dismiss (Doc. 14) is **GRANTED** in part and **DENIED** in part.

## II. BACKGROUND

For purposes of ruling on motions to dismiss, the court takes as true all factual allegations in the complaint. *Early v. Bankers Life & Casualty Co.*, 959 F.2d 75, 79 (7th Cir. 1992). On September 3, 2013, plaintiff was hired by the Wirtz Beverage Defendants. As part of her employment, she was placed on a new-employee probationary period that was set to expire on March 3, 2014. Chapman was plaintiff's district manager. From approximately September 2013 through February 2014, Chapman made sexually explicit comments and requests for sexual favors to the plaintiff. The plaintiff specifically alleges the following:

- Chapman stated "I will need to spank you if you do bad."
- Chapman informed the plaintiff that he got hard the first time he saw her
- Chapman asked plaintiff if he could see her panties and requested she send him pictures of herself in her panties.

- Chapman frequently made comments such as, "I want to see you naked," or "I want to touch you."
- Chapman suggested the plaintiff share a hotel room with him the next time they traveled for work and offered to get a hotel room with a Jacuzzi
- Chapman requested the plaintiff wear a mardi gras hat and stated he wanted to spank her
- Chapman made sexual comments regarding a tattoo on the plaintiff's lower back

Plaintiff repeatedly reported the harassment but the Wirtz Beverage Defendants took no action to prevent further sexual harassment. Plaintiff further alleges that, as retaliation for reporting Chapman's sexually harassing conduct, she received two negative "work with" evaluations, did not receive a positive "work with" evaluation despite closing a large sale, had her probationary period extended, and was terminated. Plaintiff alleges this resulted in severe emotional distress, mental anguish, and depression.

### III.  ANALYSIS

Defendants advance two principal arguments in support of their motion to dismiss. First, defendants argue plaintiff's claims for negligent hiring, negligent retention, negligent supervision, and IIED are preempted by the Illinois Human Rights Act ("IHRA"). Second, defendants argue that plaintiff's claims for negligent hiring and IIED are inadequate and should be dismissed.

### A. The IHRA and Preemption

The IHRA "is intended to secure for all individuals in Illinois freedom from unlawful discrimination in connection with employment, real estate transactions,

access to financial credit, and availability of public accommodations." *Blount v. Stroud*, 232 Ill.2d 302, 328 Ill.Dec. 239, 904 N.E.2d 1, 6 (2009). The IHRA also prohibits any employer or employee from engaging in sexual harassment. 775 ILCS 5/2–102(D). Section 2–101(E) defines sexual harassment as, "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when … such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." Pursuant to § 6-101(A) of the state statute, it is also a civil rights violation to "[r]etaliate against a person because … he or she has made a charge … under this Act."

The Illinois Supreme Court has held that courts lack subject matter jurisdiction over tort claims for IIED that are "inextricably linked" to civil rights violations under the Illinois Human Rights Act. *See Geise v. Phoenix Company of Chicago*, 159 Ill.2d 507, 518, 203 Ill.Dec. 454, 639 N.E.2d 1273, 1277 (1994); *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997).

In *Geise,* the plaintiff alleged her employer was negligent in hiring and retaining her manager who allegedly sexually harassed the plaintiff and had a history of such conduct. The Illinois Supreme Court found the plaintiff's negligence claims were inextricably linked to her sexual harassment allegations because, without the sexual harassment, there would be no independent basis for imposing liability on her employer for negligence. *Id.* at 1277. In *Maksimovic*, the Illinois Supreme Court held the plaintiff's claims of assault, battery and false

imprisonment were *not* inextricably linked with claims of sexual harassment because the plaintiff could establish "the necessary elements of each tort independent of any legal duties created by the Act." *Maksimovic,* 687 N.E.2d at 22. The Court also clarified its earlier holding in *Geise* stating as follows:

> The rule from *Geise* is not that the Act precludes the circuit court from exercising jurisdiction over *all* tort claims related to sexual harassment. Rather, whether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.

*Id.* at 23.

In *Naeem v. McKesson Drug Co.,* the Seventh Circuit offered additional guidance on the IHRA preemption analysis, stating as follows:

> The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it.

444 F.3d 593, 604 (7th Cir. 2006) (internal citations and quotations omitted). Hence, if plaintiff's claims "rest [ ] not just on behavior that is sexually harassing, but rather behavior that would be a tort [regardless of defendant's] motives," they are not preempted. *Id*. at 605.

In reaching this conclusion, the Appellate Court was critical of district courts that based the preemption decision on the facts underlying the claim instead of legal duties. *Id.* at 603 n. 4 ("despite *Maksimovic's* holding that

preemption should rest on an examination of legal duties, not on the factual basis of claims, district courts have found IHRA preemption of an intentional infliction of emotional distress claim when a plaintiff alleged the same conduct to support intentional infliction of emotional distress as was alleged to support a claim of disability, racial or sexual harassment."). On the other hand, the Appellate Court cited with approval district court cases which "correctly looked to the source of the legal duty in determining preemption," instead of the facts alleged in support of the claims. *Id.*

Two of the cases cited with approval in the *Naeem* decision are *Roberts v. Cnty. of Cook*, 213 F.Supp.2d 882, 887 (N.D.Ill. 2002) (Bucklo, J.) and *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F.Supp.2d 951, (N.D.Ill. 2002) (Gottschall, J.). In *Roberts*, the district court found the plaintiff's claim for IIED was not preempted by the IHRA and explained as follows:

> Although the allegations of discrimination and intentional infliction of emotional distress both involve sexual elements, [plaintiff's] IIED claim remains fully intact because it does not depend on the prohibitions against sex discrimination for its survival. Intentional infliction of emotional distress is a long recognized tort action that exists independently of a cause of action under the IHRA.

*Roberts*, 213 F. Supp. 2d at 887 (internal quotations and citations omitted). In *Arnold*, the district court reached a similar conclusion as to each of the plaintiff's tort claims:

> Each of Arnold's tort claims is grounded in legal duties independent of the IHRA. Most fundamentally, the duty not to intentionally and knowingly inflict severe emotional distress derives from common law, not statutory law. That extreme and offensive conduct might also

> constitute sexual harassment or disability discrimination under state or federal civil rights laws does not affect the viability of a tort claim for intentional infliction of emotional distress.
>
> Neither are the negligent retention, training, and supervision claims preempted. Employers have a duty not to retain employees where it is reasonably foreseeable that doing so will lead to a particular type of harm to a third person. So too employers sometimes have a duty to protect their employees from an imminent danger of serious harm. Arnold's theory is that defendants knew or should have known that supervisors and employees had inflicted severe emotional distress on her and were likely to continue doing so. Retaining such employees and failing to train or supervise them may have amounted to actionable negligence quite apart from any duties created by the IHRA.

*Arnold,* 215 F. Supp. 2d at 955-956.

### B. Intentional Infliction of Emotional Distress

The IHRA creates a duty to keep the workplace free from sexual harassment. However, an employer also has a duty not to commit the tort of intentional infliction of emotional distress. This duty existed long before the enactment of the IHRA and is independent of any duties created by the IHRA. *See Maksimovic*, 227 Ill.Dec. 98, 687 N.E.2d at 24. Accordingly, applying the analysis outlined in *Naeem*, the proper inquiry here is not whether the alleged facts support a claim for sexual harassment, but whether the alleged facts support a claim for IIED independent of the legal duties created by the IHRA.

In order to state a claim for IIED, plaintiff must allege that: "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's

conduct did cause severe emotional distress." *Naeem*, 444 F.3d at 605. Thus, if the complaint alleges extreme and outrageous conduct, the requisite intent, and resultant severe emotional distress, the IHRA does not preempt the plaintiff's IIED claim.

With regard to the first element, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Swearnigen–El*, 602 F.3d at 864; *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). Illinois Appellate Courts have "found that continued pressuring of an employee for dates and offering her money in return for sexual favors constitute[s] a cumulative pattern of offensive conduct sufficient to inflict actionable emotional distress." *Pavlik v. Kornhaber*, 761 N.E.2d 175, 186 (Ill. App. Ct. 2001). In *Pavlik*, the plaintiff's employer "initiated a campaign of egregious and offensive sexual overtures and used his position as a therapist and employer in an attempt to get her to submit to his desires." *Id.* at 179. The Illinois Appellate Court held that a jury could conclude that the "defendant's notes, sexually explicit comments, insistence on meetings the subject of which was his desire for sexual contact, and lewd behavior in an employer-employee relationship were such that a 'woman of ordinary morality and sensibilities' would perceive them to be sufficiently offensive and sinister to rise to the level of extreme and outrageous behavior." *Id. citing Pavilon v. Kaferly* 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990). [1]

---

[1] *Pavlik* relied on reasoning set forth in *Pavilon v. Kaferly*, 561 N.E.2d 1245 (Ill. App. Ct. 1990). In *Pavilon,* the Illinois Appellate Court upheld an IIED claim where the employer repeatedly

Plaintiff contends that over the course of approximately six months, defendant Chapman made comments about her body and his desire to have sexual relations with her; propositioned her for sex and/or asked her to engage in sexual activities; and described other acts he wanted to perpetrate on her. Plaintiff informed Chapman that all of these actions were unwelcome and made her uncomfortable. Plaintiff complained about the conduct to human resources on two separate occasions. Despite these complaints, the Wirtz Beverage Defendants took no action and plaintiff was forced to continue working with Chapman. In fact, Chapman was promoted despite the alleged conduct. The plaintiff was allegedly retaliated against in the form of unwarranted negative "Work With" evaluations, failure to receive a positive "Work With" evaluation despite closing an important sale, an unjustified extension of her probationary employment period, and termination from employment. Plaintiff claims the harassment and retaliation caused her to suffer severe emotional distress, mental anguish, and depression.

Based on the allegations in plaintiff's complaint, the Court cannot conclude that, at this point in the litigation, the plaintiff would be unable to prove sufficient facts to support her claims for IIED. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (complaint should not be dismissed

---

propositioned the plaintiff for sex, offered the plaintiff money for sex, fired her when she refused, harassed the plaintiff's family, and ultimately threatened to kill and rape the plaintiff. Obviously, *Pavilon* involved the threat of physical violence, and additional misconduct not here alleged. However, language in the *Pavilon* decision indicates that a cumulative pattern of unwanted sexual advances by a supervisor in the workplace, standing alone, could support a claim for IIED. *See Pavilon v. Kaferly,* 561 N.E.2d 1245, 1252 (Ill. App. Ct. 1990)("To a woman of ordinary morality and sensibilities, the offensive manner and sinister persistency of such sexual pursuit can be perceived to rise to the level of conduct which is 'truly extreme and outrageous.' The impact of such outrageous conduct is exacerbated where, as here, the offender was also the employer of the victim."); *Id.* ("coercion to date and engage in unwanted sex" is "extortive and outrageous.").

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would" entitle her to relief). Thus, although the Court recognizes Illinois has a very high standard for what constitutes "extreme and outrageous" conduct; it will not dismiss the claim on the pleadings.

Further, because the plaintiff has alleged the elements of an IIED claim, independent of the legal duties created by the IHRA, the fact that the underlying facts also give rise to a claim for sexual harassment, does not deprive the Court of subject matter jurisdiction.

### C. Preemption - Negligent Hiring, Retention, and Supervision

Plaintiff's claims for negligent hiring, retention, and supervision are factually related to incidents of alleged sexual harassment. However, as discussed above, mere factual overlap is not decisive. Here, the plaintiff also alleges that defendant Chapman's extreme and outrageous conduct caused severe emotional distress. As noted in *Arnold,* hiring, retaining, and failing to supervise such an employee may amount to actionable negligence apart from any duties created by the IHRA. Accordingly, to the extent that plaintiff seeks to hold the Wirtz Beverage defendants liable for negligently failing to prevent the intentional infliction of emotional distress, her negligence theories are not preempted by the IHRA.

### D. Failure to State a Claim – Negligent Hiring

In order to state a claim for negligent hiring, plaintiff must allege: (1) that the employer knew or should have known that the employee had a particular

unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring; and (3) that this particular unfitness proximately caused the plaintiff's injury. *Van Horne v. Muller*, 294 Ill.App.3d 649, 657, 229 Ill.Dec. 138, 691 N.E.2d 74 (1 Dist.1998), modified on other grounds, 185 Ill.2d 299, 235 Ill.Dec. 715, 705 N.E.2d 898 (Ill.1998). Here, plaintiff fails to plead any *facts* showing that the Wirtz Beverage Defendants knew or should have known about Chapman's alleged fitness at the time he was hired. Instead, her complaint merely provides a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Accordingly, the motion to dismiss, as to this claim, is **GRANTED**, with leave to refile.

## IV.     CONCLUSION

For the reasons discussed herein, the motion to dismiss (Doc. 14) is **GRANTED** in part and **DENIED** in part. The motion to dismiss the negligent hiring claims as to the Wirtz Beverage Defendants (Counts III, IX, and XV) is **GRANTED**, with leave to refile. The motion to dismiss the negligent retention, negligent supervision, and intentional infliction of emotional distress claims is **DENIED**.

**IT IS SO ORDERED.**

Signed this 9th day of June, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.06.09 16:01:53 -05'00'

United States District Judge